IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION


DENA INEZ PENCE                                                                    PLAINTIFF


            v.                              Civil No. 12-3166


CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                                          DEFENDANT

MEMORANDUM OPINION

Plaintiff, Dena Inez Pence, brings this action under 42 U.S.C. § 405(g), seeking judicial review

of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim

for a period of disability, disability insurance benefits ("DIB"), supplemental security income ("SSI")

under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence

in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

## I.       Procedural Background:

Plaintiff applied for SSI and DIB on August 4, 2010. (Tr. 11.)  Plaintiff alleged an onset date of

August 7, 2008. (Tr. 11.)  Plaintiff alleged spondylolisthesis, diverticulosis, cluster headaches, diabetes,

stress incontinence, and depression. (Tr 194.) Plaintiff's applications were denied initially and on

reconsideration. Plaintiff requested an administrative hearing, which was held on August 18, 2011 (Tr.

29.) Plaintiff was present to testify and was represented by counsel.  The ALJ also heard testimony from

Plaintiff's daughter Kylie Pence, and Sarah Moore, Vocational Expert ("VE").

At the time of the administrative hearing, Plaintiff was 43 years old, and possessed a high school

diploma. The Plaintiff had past relevant work experience ("PRW") as a cook. (Tr. 22.)

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule
25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner
Michael J. Astrue as the defendant in this suit.

AO72A
(Rev. 8/82)

On October 4, 2011, the ALJ concluded that the Plaintiff had the following severe impairments: depressive disorder, not otherwise specified (NOS), diverticulitis, morbid obesity, stress incontinence, headaches and diabetes mellitus. (Tr. 13.)   The ALJ found that Plaintiff maintained the residual functional capacity to perform light work with additional limitations. She was limited to work that involves simple, routine, and repetitive tasks, involving only simple, work-related decisions, with few, if any, workplace changes. She was also limited to no more than incidental contact with coworkers, supervisors, and the general public. (Tr. 16.) With the assistance of the VE, the ALJ determined that the Plaintiff could perform such representative occupations as housekeeper, small products assembler, and machine tender. (Tr. 23.)

Plaintiff requested a review by the Appeals Council on October 26, 2011. (Tr. 7.) The Appeals Council denied the appeal on November 15, 2011. (Tr. 1.)

**II.     Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence  is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

AO72A
(Rev. 8/82)

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

## III. Discussion:

Plaintiff raises two issues on appeal: 1) the ALJ "fail[ed] to perform the necessary function-by-function analysis to support the RFC;" and 2) the ALJ "fail[ed] to give significant weight to the treating doctor who sees her every three months."(Pl.'s Br. 2.)

### A. ALJ Development of the Record

AO72A
(Rev. 8/82)

Plaintiff argues that the ALJ failed to perform the necessary function analysis  on all of Plaintiff's conditions and therefore provided an incomplete set of hypothetical to the VE. We agree that the Plaintiff's gastrointestinal issues were not fully considered.

The ALJ has a duty to fully and fairly develop the record in coming to an overall RFC determination.  See *Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exists "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) (quoting *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)). "An ALJ should recontact a treating or consulting physician if a critical issue is undeveloped." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010).

In this case, the issues of the Plaintiff's headaches, depression, and diabetes were well-developed in the transcript, with records from her treating physician Dr. Klepper, her treating neurologist Dr. Sreepada, and consulting examining psychologist Dr. Nichols. Also well-developed was the ALJ's credibility analysis on these issues, outlining Plaintiff's failure to follow her physicians' treatment advice regarding her consumption of Mountain Dew, her use of available funds for cigarettes rather than prescribed medications, and her failure to pursue treatment for depression. (Tr. 17-22.) The ALJ correctly noted her obesity and that there was no evidence in the record that it affected Plaintiff's ability to ambulate or perform necessary physical activity for work. (Tr. 19.)

However, the issues of the Plaintiff's diverticulosis  and stress incontinence are not well-developed, and appear to have been left unresolved,  possibly due to Plaintiff's lack of credibility on her other health issues. Plaintiff provided evidence that her chronic diverticulosis with repeated diverticulitis flare-ups was serious enough to require re-sectioning of her left colon. (Tr. 406.) Only about 20% of patients with diverticulosis ever exhibit clinical symptoms, and of those, an even smaller percentage will require surgery. *See* Neil H. Stollman & Jeffrey B. Raskin, *Practice Guidelines: Diagnosis and*

4

*Management of Diverticular Disease of the Colon in Adults*, 94 AMERICAN JOURNAL OF GASTROENTEROLOGY 3110, 3110, 3115 (1999); http://www.merckmanuals.com/professional/gastrointestinal_disorders/diverticular_disease/diverticulosis.html (last accessed Jan. 13, 2014.) Plaintiff's urinary tract infections may also be related to the diverticulitis. Stollman, 94 AMERICAN JOURNAL OF GASTROENTEROLOGY at 3113.

The ALJ discredited Plaintiff's testimony concerning abdominal pain and incontinence because she did not complain of abdominal pain or incontinence in two of her post-surgery doctor's visits. (Tr. 19.) However, as an inflammatory disease, diverticulitis can recur, exhibiting flare-ups and subsidence. Stollman, 94 AMERICAN JOURNAL OF GASTROENTEROLOGY at 3116. Thus, the fact that Plaintiff reported abdominal pain in only some post-surgery doctor's visits does not automatically discredit her testimony concerning the diverticulitis and incontinence.

Both Plaintiff's testimony concerning her diverticulitis and incontinence and the VE's responses to hypotheticals incorporating that testimony indicated that, if true, Plaintiff may well be disabled. Thus the diverticulitis and incontinence are critical issues in the claim. Plaintiff had her colon surgery on September 13, 2010. (Tr. 393.) Plaintiff testified that the surgeon told her he was only able to get part of the problem area in her colon, but that the surgeon "got as much as he was comfortable getting." (Tr. 34.) Plaintiff testified that the surgery helped in that she didn't hurt as badly as prior to the surgery, but that she still experienced abdominal pain, noises, and cramping. She testified that she still suffers from incontinence. (Tr. 37-38.)

Plaintiff testified that during an 8-hour workday, she would have to go to the bathroom immediately about six or seven times a day. (Tr. 47.) Each of these breaks would probably take about ten minutes unless she did not make it to the bathroom in time, soiled herself, and needed to change clothes. (Tr. 47-48.) When the requirement for approximately six unscheduled breaks for ten minutes each was added to the hypothetical, the VE opined that she would not be able to do any of her past or

5

other work without significant accommodation from her employer. (Tr. 60.) When queried what would happen if someone took off one-third of the workday for off tasks and/or missed two days per month, the VE opined that they would not be able to hold down employment.(Tr. 60-61.)

In summary, although we do not feel that the ALJ failed to develop the record, we do believe that he failed to properly consider the Plaintiff's limitations associated with her gastrointestinal issues and remand for further consideration on these issues. On remand, the ALJ is directed to order a consultative examination with a gastroenterologist to evaluate Plaintiff's diverticulitis and incontinence.

### B. Treating Physician Klepper's Physical RFC

Plaintiff argues that the ALJ erred by failing to give significant weight to treating physician Dr. Klepper's Physical RFC statement. (Pl.'s Br. 9.) We disagree, but remand for other reasons.

Under the regulations, a treating physician's opinion will be given controlling weight unless it not supported by medically acceptable evidence or is inconsistent with other substantial evidence in the record. 20 C.F.R. §404.1527(c)(2). (WL current through Jan. 9, 2014.) It is well-settled in the Eighth Circuit that a treating physician's opinion is "normally entitled to great weight," but that "such an opinion does not automatically control, since the record must be evaluated as a whole." *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) (internal citations and quotation alterations omitted). The ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments 'are supported by better or more thorough medical evidence,' or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Reed v. Barnhart*, 399 F.3d 917, 920-21 (8th Cir. 2005) (citing *Prosch,* 201 F.3d at 1013.) The ALJ may also discount a treating physician's opinion when it is based solely on subjective complaints and "is at odds with the weight of the objective evidence" *Rankin v. Apfel*, 195 F.3d 427, 430 (8th Cir. 1999); *Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir. 1993) (opinion of treating physician entitled to little weight when based solely on claimant's subjective complaints of pain).

AO72A
(Rev. 8/82)

In this case, the ALJ discounted Dr. Klepper's RFC assessment because he "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints." (Tr. 21.) The ALJ also noted that Dr. Klepper's opinion in the RFC document was "without substantial support from other evidence in the record." (Tr. 21.)

Upon review of the record, it appears that the ALJ properly discounted Dr. Klepper's RFC. Dr. Klepper has been Plaintiff's treating physician since 2006 and has seen her approximately every three months since that time. (Tr. 299, 477.) He was the consulting physician for her surgery and referred her to Dr. Sreepada (neurologist) for her headaches. (Tr. 287, 322.) Both Dr. Sreepada and Dr. Klepper have been consistent in diagnosing her with cluster headaches. However, Dr. Sreepada found that she was doing "fairly well" with her adjusted medications in October 2010, the last notation in the record from Dr. Sreepada. (Tr. 442.) Dr. Klepper diagnosed her with probable migraines in September 2008. (Tr. 296.) He noted the cluster headaches in her history when he saw her for a right breast lesion in February 2011and chest pain in August 2011. (Tr. 515, 518.) In these last exams there are no notations that she reported any issues with the headaches. Yet in the RFC he indicated that Plaintiff "states: with headaches pain gets to be gets to be #10/10" on a one to ten scale. (Tr. 477.) He also stated that "the pain gets so severe at times that she 'can't function.'" (Tr. 478.)

Dr. Klepper also indicated that Plaintiff was depressed, fatigued easily due to depression. and that her pain and other symptoms would interfere with her attention and concentration occasionally. (Tr. 477-78.) Yet the medical record only shows that he prescribed an anti-depressant one time for "prolonged grief reaction" when her father died. (Tr. 297.) Consulting psychological examiner Dr. Nichols saw Plaintiff on September 27, 2010. (Tr. 433.) He suspected Plaintiff of symptom exaggeration.

AO72A
(Rev. 8/82)

(Tr. 436.) He found that her concentration was intact and he observed no mental fatigue. (Tr. 436.) Due to her suspected exaggeration, his diagnosis of depressive disorder NOS, was guarded. (Tr. 436, 437.)

Further, there is one internal inconsistency in Dr. Klepper's RFC that also raises a question as the reliability of the assessment. Dr. Klepper indicated that the Plaintiff would not need to take unscheduled breaks during an 8-hour workday. This would seem to be inconsistent with his diagnosis of stress incontinence and diverticulitis elsewhere in the document and with the rest of the record, including Plaintiff's testimony.

Unfortunately, the only other Physical RFC on the record is from a non-examining medical consultant, which cannot be used alone as substantial evidence of Plaintiff's physical capacity. *See Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003) (the opinion of nontreating, nonexamining medical consultants who relied on the records of treating sources to form an opinion do not normally constitute substantial evidence on the record as a whole.)

On remand, the ALJ is directed to have the gastroenterologist complete a physical function analysis for Plaintiff as part of the consultative examination.

**V.    Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 15th day of January 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)